## GAMBINO ET AL. *v.* UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 226.  Argued October 12, 13, 1927.—Decided December 12, 1927.

1. The term "any officer of the law" in § 26, Title II of the National Prohibition Act, refers only to federal officers. P. 313.
2. If it appears from the evidence or from facts of which the Court will take judicial notice, that, in making a search and seizure, state officers were acting solely on behalf of the United States, evidence thus obtained is inadmissible in a prosecution in a federal court if the circumstances of the search and seizure were such as to render it unlawful. P. 314.
3. Defendants were arrested by New York State troopers, their automobile (while occupied by one of them and therefore within the protection accorded to his person) was searched without a warrant, intoxicating liquor found therein was seized, and defendants and liquor were immediately turned over to federal authorities for prosecution under the National Prohibition Act. The troopers acted without probable cause, and made the arrest, search and seizure solely on behalf of the United States. *Held,* that the admission in evidence of the liquor in such prosecution violated the Fourth and Fifth Amendments. P. 316.
4. A conviction in a federal court resting wholly upon evidence obtained through a violation of the defendants' constitutional rights may be reversed although the point was not properly presented in the courts below. P. 319.

16 F. (2d) 1016, reversed.

CERTIORARI, 274 U. S. 733, to a judgment of the Circuit Court of Appeals, affirming a conviction in the District Court for conspiracy to import and transport liquor in violation of the National Prohibition Act.

*Mr. Irving K. Baxter* for petitioners.

*Assistant Attorney General Willebrandt,* with whom *Solicitor General Mitchell,* and *Mr. Norman J. Morrisson,* Attorney in the Department of Justice, were on the brief, for the United States.

State officers, acting independently, are not agents of the United States, and if they obtained evidence illegally, it was nevertheless admissible in the prosecution in a federal court.

It is urged that the state officers are made agents of the United States for the purpose of enforcing the National Prohibition Act and that, under a mandate from Congress, it was their duty to enforce that Act. This claim is predicated upon § 26, Title II, of the National Prohibition Act and particularly upon the words " any officer of the law." *U. S.* v. *Story,* 294 Fed. 517, the first decision construing this phase of § 26, concludes that Congress contemplated the enforcement of the National Prohibition Act through state officers as well as through federal officers. But the *Story* case stands alone on this point. Though they have considered it, other lower federal courts have refused to follow that conclusion. *U. S.* v. *Loomis,* 297 Fed. 359; *The Ray of Block Island,* 7 F. (2d) 189, affirmed, 11 F. (2d) 522; *Dodge* v. *U. S.,* 272 U. S. 530.

All that was done by officers of the United States in this case was done long after the seizure had been completed. Acceptance of the things seized was not an act which deprived petitioners of any right under the Fourth and Fifth Amendments. The Government might, with equal propriety, have allowed the seized articles to remain with the state officers and later secured their production by a *subpœna duces tecum.* Neither course would have encountered constitutional objection. *Burdeau* v. *McDowell,* 256 U. S. 465. Certainly the acceptance of this property by the government officer was not a ratification of an unconstitutional act, for the arresting officers, acting independently of federal agents, did not

have the capacity to commit an act violative of the Fourth and Fifth Amendments. It being well established that these Amendments do not apply to state officers, the act of the government officers, if it be a ratification of anything, must be considered as an adoption of an act constitutionally unobjectionable. *Robinson* v. *U. S.*, 292 Fed. 683.

Since there was no federal cooperation in the making of this search and seizure, the rule announced in *Byars* v. *U. S.*, 273 U. S. 28, does not apply. It appears, therefore, that this case falls within the rule, long regarded as settled, that the use by prosecuting officers of evidence illegally acquired by others than government officers does not necessarily violate the Constitution of the United States, nor affect the admissibility of such evidence in a federal court. *Weeks* v. *U. S.*, 232 U. S. 383; *Adams* v. *New York*, 192 U. S. 585; *Burdeau* v. *McDowell*, 256 U. S. 465; *McGuire* v. *U. S.*, 273 U. S. 95. See also, *Twining* v. *N. J.*, 211 U. S. 78.

Under the circumstances of this case, absent any participation by federal officers, the District Court was under no obligation to inquire into the legality of the acts of the state officers. *McGrew* v. *U. S.*, 281 Fed. 809; *Coates* v. *U. S.*, 290 Fed. 134; *Schroeder* v. *U. S.*, 7 F. (2d) 60; *Elam* v. *U S.*, 7 F. (2d) 887.

There was probable cause for the search.

Mr. Justice Brandeis delivered the opinion of the Court.

On August 1, 1924, Gambino and Lima were arrested by two New York state troopers, near the Canadian border; their automobile (while occupied by Gambino and therefore within the protection accorded to his person) was searched without a warrant; and intoxicating liquor found therein was seized. They, the liquor and other

property taken were immediately turned over to a federal deputy collector of customs for prosecution in the federal court for northern New York.   There, the defendants were promptly indicted for conspiracy to import and transport liquor in violation of the National Prohibition Act.   They moved seasonably, in advance of the trial and again later, for the suppression of the liquor as evidence and for its return, on the ground that the arrest, the search and the seizure were without a warrant and without probable cause, in violation of the Fourth, Fifth and Sixth Amendments of the Federal Constitution.   The motion was denied; the evidence was introduced at the trial; the defendants were found guilty; and they were sentenced to fine and imprisonment.   The Court of Appeals affirmed the judgment.   Neither court delivered an opinion.   This Court granted a writ of certiorari, 274 U. S. 733.

The Government contends that the evidence was admissible, because there was probable cause, *Carroll* v. *United States,* 267 U. S. 132, 153, and also because it was not shown that the state troopers were, at the time of the arrest, search and seizure, agents of the United States. The defendants contend that there was not probable cause and that the state troopers are to be deemed agents of the United States, because § 26 of Title II of the National Prohibition Act imposes the duty of arrest and seizure where liquor is being illegally transported, not only upon the Commissioner of Internal Revenue, his assistants and inspectors, but also upon " any officer of the law."  We are of opinion on the facts, which it is unnecessary to detail, that there was not probable cause.   We are also of opinion that the term " any officer of the law " used in § 26 refers only to federal officers, and that the troopers were not, at the time of the arrest and seizure, agents of the United States.   Compare *Dodge* v. *United States,* 272 U. S. 530, 531.

But the National Prohibition Act, October 28, 1919, c. 85, Title II, § 2, 41 Stat. 305, 308, contemplated some coöperation between the state and the federal governments in the enforcement of the Act. Thus, § 2 made applicable the provisions of § 1014 of the Revised Statutes whereby state magistrates were authorized " agreeably to the usual mode of process against offenders in such State, and at the expense of the United States," to arrest and imprison, or bail, offenders against any law of the United States for trial before the federal court, and to require " recognizances of witnesses for their appearance to testify in the case." Section 2 also gave specific authority to the state magistrates to issue search warrants under the limitations fixed by the federal statutes. Act of June 15, 1917, c. 30, Title XI, 40 Stat. 217, 228. Evidence obtained through wrongful search and seizure by state officers who are coöperating with federal officials must be excluded. See *Flagg* v. *United States*, 233 Fed. 481, 483, approved in *Silverthorne* v. *United States*, 251 U. S. 385, 392. In *Byars* v. *United States*, 273 U. S. 28, 34, evidence obtained by state officers through search and seizure made without a warrant and without probable cause, but in the presence of a federal official, was held inadmissible. The question here is whether, although the state troopers were not agents of the United States, their relation to the federal prosecution was such as to require the exclusion of the evidence wrongfully obtained.

The Mullan-Gage Law—the state prohibition act—had been repealed in 1923. Act of June 1, 1923, c. 871, 1923 N. Y. Laws, p. 1690. There is no suggestion that the defendants were committing, at the time of the arrest, search and seizure, any state offense; or that they had done so in the past; or that the troopers believed that they had. Unless the troopers were authorized to make the arrest, search and seizure because they were aiding in the enforcement of a law of the United States, their action

would clearly have been wrongful even if they had had positive knowledge that the defendants were violating the federal law. No federal official was present at the search and seizure; and the defendants made no attempt to establish that the particular search and seizure was made in coöperation with federal officials. But facts of which we take judicial notice, compare *Tempel* v. *United States*, 248 U. S. 121, 130, make it clear that the state troopers believed that they were required by law to aid in enforcing the National Prohibition Act; and that they made this arrest, search and seizure, in the performance of that supposed duty, solely for the purpose of aiding in the federal prosecution.

In the memorandum filed by the Governor approving the Act which repealed the Mullan-Gage law, he declared that all peace officers, thus including state troopers, are required to aid in the enforcement of the federal law " with as much force and as much vigor as they would enforce any State law or local ordinance "; and that the repeal of the Mullan-Gage law should make no difference in their action, except that thereafter the peace officers must take the offender to the federal court for prosecution.[1] Aid so given was accepted and acted on by the federal officials.[2]

---

[1] Memorandum filed with Assembly Bill, Introductory No. 1614, Printed No. 1817, p. 2. See also Messages of Jan. 2, 1924, N. Y. Leg. Doc., 147th Sess., 1924, No. 3, p. 40, and Jan. 7, 1925, N. Y. Leg. Doc., 148th Sess. 1925, No. 3, pp. 39–40; Report of the Department of State Police for 1924, N. Y. Leg. Doc., 148th Sess., 1925, No. 50, p. 13.

[2] Immediately after the repeal of the Mullan-Gage law the Federal Prohibition Director in New York City announced that he would call upon the Superintendent of State Troopers, the sheriff of each county, and every chief of police to aid in arresting violators of the National Prohibition Act. In February, 1924, he attended a conference of state and federal enforcement agencies at Albany, where he reiterated the need for co-operation. That arrests for violation of the Volstead Act in northern New York were commonly made by state troopers, during 1924, see testimony of federal prohibition agents in Hearings before the Committee on the Judiciary of the House of Representatives,

It appears that one of the troopers who made the arrest and seizure here in question had been stationed at the Canadian border for eighteen months prior thereto, the greater part of that period being after the repeal of the Mullan-Gage law.  It was also shown that immediately after the arrest and seizure, the defendants, their car and the liquor were, after they had been taken to the committing magistrate, turned over to the federal officers.  In view of these facts, the statement, in the affidavit of one of the troopers, that at the time of the arrest and search "there were no federal officers present, and that we were not working in conjunction with federal officers" must be taken to mean merely that the specific arrest and search was not directly participated in by any federal officer.

We are of opinion that the admission in evidence of the liquor wrongfully seized violated rights of the defendants guaranteed by the Fourth and Fifth Amendments.  The wrongful arrest, search and seizure were made solely on behalf of the United States.  The evidence so secured was the foundation for the prosecution and supplied the only evidence of guilt.  It is true that the troopers were not shown to have acted under the directions of the federal officials in making the arrest and seizure.  But the rights guaranteed by the Fourth and Fifth Amendments may be invaded as effectively by such cooperation, as by the state officers' acting under direction of the federal officials.  Compare *Silverthorne* v. *United States,* 251 U. S. 385, 392.  The prosecution thereupon instituted by the federal au-

---

69th Cong., 2d Sess., on H. Res. 398 and H. Res. 415, pp. 37, 71, 79, 88, 100.  For the part played by the New York City police in enforcement of the National Prohibition Act long after the repeal of the Mullan-Gage law, see testimony of the United States Attorney for the Southern District of New York, Hearings before the Subcommittee of the Committee on the Judiciary, U. S. Senate, 69th Cong., 1st Sess., on S. 33, S. 34, S. 591, S. 592, S. 3118, S. J. Res. 34, S. J. Res. 81, S. J. Res. 85, S. 3823, S. 3411, and S. 3891, pp. 96, 99, 103, 107.

thorities was, as conducted, in effect a ratification of the arrest, search and seizure made by the troopers on behalf of the United States.   Whether the laws of the state actually imposed upon the troopers the duty of aiding the federal officials in the enforcement of the National Prohibition Act we have no occasion to enquire.

. The conclusion here reached is not in conflict with any of the earlier decisions of this Court in which evidence wrongfully secured by persons other than federal officers has been held admissible in prosecutions for federal crimes. For in none of those cases did it appear that the search and seizure was made solely for the purpose of aiding the United States in the enforcement of its laws.   In *Weeks* v. *United States,* 232 U. S. 383, the papers not ordered returned had been obtained by a policeman who searched the defendant's home after his arrest by another state officer.   Pp. 386, 398.   It was not shown there that either the arrest or the search was made solely for the purpose of aiding in the prosecution of the federal offense.   A law of the State made criminal the acts with which the defendant was charged;[3] and the seizure may have been made in enforcing the state law.   In *Center* v. *United States,* 267 U. S. 575 *(Per Curiam),* the liquor admitted in evidence had been taken by the state officials for immediate use as evidence in the state courts.   Proceedings against the defendant, the car and the liquor were instituted there four months before the prosecution in the federal court was begun.   In *Dodge* v. *United States,* 272 U. S. 530, a libel to forfeit a vessel which had originally been seized by a state officer, the question presented was one of jurisdiction.   The Court in sustaining the jurisdiction, although the original seizure had been made by the state officer without authority, said, p. 532: " The exclusion of evidence obtained by an unlawful search and seiz-

[3] Missouri Revised Statutes, 1909, §§ 4770, 4771..

ure stands on a different ground." In *Burdeau* v. *Mc-Dowell,* 256 U. S. 465, the books and papers admitted had been taken by private detectives. The District Court ordered the return " solely upon the ground that the Government should not use stolen property for any purpose after demand made for its return." P. 472. This Court based its reversal on the finding that " the record clearly shows that no official of the Federal Government had anything to do with the wrongful seizure of the petitioner's property, or any knowledge thereof until several months after the property had been taken from him and was in the possession of the Cities Service Company." P. 475.

There have been many instances in which the lower federal courts have admitted evidence obtained by state officers through wrongful search and seizure; but only three reported cases have been found in which it could have been seriously contended, in view of the law of the State and the facts appearing in the opinion, that the search and seizure had been made solely for the purpose of aiding in the enforcement of the federal law. *Schroeder* v. *United States,* 7 F. (2d) 60; *Greenberg* v. *United States,* 7 F. (2d) 65; *Katz* v. *United States,* 7 F. (2d) 67. These cases, like the present one, were decisions of the Court of Appeals for the Second Circuit, and involved searches and seizures made by officers of New York subsequent to the repeal of the Mullan-Gage law.[4] An examination of the record in the *Schroeder* case discloses that the sergeant of police who made the search and seizure was not acting solely to enforce the National Prohibition Act. He was a confidential investigator, charged with the task of detecting cor-

---

[4] Compare *United States* v. *Bush,* 269 Fed. 455; *In re Schuetze,* 299 Fed. 827; *United States* v. *Dossi,* 12 F. (2d) 956; and *United States* v. *Costanzo,* 13 F. (2d) 259—in all of which the District Court for Western New York refused to permit the use of evidence obtained by state officials, on a finding that they were acting in coöperation with the federal authorities.

ruption and other derelictions of duty on the part of police officers; the defendant was likewise a police officer; and the sergeant, on making the search and seizure, informed the defendant that he was acting in pursuance of his regular duties. These facts were relied upon by the Government in both the trial and the appellate court. In the *Greenberg* and *Katz* cases the situation was wholly different. The Court of Appeals, failing to note the difference, treated its decision in the *Schroeder* case as controlling, and did not give adequate consideration to the peculiar relation borne in New York, then as now, by state officers to federal prohibition enforcement, although the point was made by the defendant and a decision thereon was urgently sought by the United States Attorney.

The record in the case at bar does not show that the relation between the state troopers and the federal agencies for prohibition enforcement was called by counsel to the attention of the court. But as the conviction of these defendants rests wholly upon evidence obtained by invasion of their constitutional rights, we are of opinion that the judgment should be reversed and the case remanded for further proceedings. Compare *Wiborg* v. *United States,* 163 U. S. 632, 658–660; *Clyatt* v. *United States,* 197 U. S. 207, 221–222.

*Reversed.*